You're right, that's correct. Sad case. It is. Boat sinks, ends up in the trough. Hang on just a second, let me clear out behind you. Okay, tell us who you are and please begin. Thank you, Your Honors. Good morning. It's my pleasure to be here. My name is Michael Donahoe. I work for the Federal Defenders of Montana. I was appointed by Judge Moy to represent Mr. Knopfle. As Your Honors are aware, this case involves Clean Water Act action, and we bring two claims, the government brings two claims. I'd like to discuss one of each that I think are related. The first, I'd like to talk about the indictment as it's drawn and the fact that the government saw fit to move for dismissal under Rule 48 after I had made a motion under Rule 29 for dismissal of the entire case based on a lack of proof brought forward against the corporation. Actually, I find your argument completely baffling. I don't understand it. I don't – absolutely do not understand it. If you charge in an indictment A and B and then you drop B, how is that a change in the indictment with regard to A? Well, I think a useful way of looking at this, Your Honors, and I think it's easy to get stuck on this claim. Easy what? It's easy to get stuck on this claim. But a useful way of looking at this, I've tried many cases in my years, as I'm sure some of you have. It's not unusual in a drug case, a bank fraud case, a multiple defendant case, to have defendants Smith, Jones, and Brown before the court. It happens on occasion that Mr. Brown reaches some disposition with the government, either just before the trial or during the trial sometimes. And there's a jury instruction that says Mr. Brown's case has been disposed of and you are not to take that into consideration with respect to the determination of guilt or innocence of the remaining defendants before you. Now, that's not the case here because the introductory paragraphs of this indictment identify Mr. Canoffel as an individual. It identifies the corporation and the fact that Mr. Canoffel is the sole owner of the corporation. So there's a definite legal connection. And I use that technical term that I learned in law school long ago, reification. Mr. Canoffel reifies this corporation. Was there ever a corporation? There was, Judge, at some point in time. Mr. Canoffel did testify in the court. It was a separate entity. But Mr. Canoffel as an individual brings life to it. Now, each — Well, any corporation can work with that. Right. But each — right. Each substantive count of the indictment, and I challenge the Court to study each of the counts. It says that Mr. Canoffel and Advanced Docks and Decks. There is no indication. If we just change that word and to s and said Mr. Canoffel as Advanced Docks and Decks, there's absolutely no question, at least in our view, that the corporation has been charged with a crime. And in fact — It was charged with a crime, but then it was dismissed. Right. But it can't be dismissed unless it's clear, absolutely clear, that Mr. Canoffel was charged as an individual. And that is not clear on the face of this indictment. Does the indictment name him as a separate defendant? I'm sorry, Your Honor? Does the indictment name him as a separate defendant? Not that I see. And that's what we argued. And the district judge was troubled by it when we brought the motion. There is some convoquism, discussion in chambers about that. We went to trial, and I'll go right into the acceptance of responsibility issue. Well, the caption itself says, Timothy Lowell Canoffel and Advanced Docks and Decks, defendants plural. And I understand that it says defendants plural as a caption. But when you get to the body of the substantive allegations here, it says that this corporation was intimately involved in these activities. It does not single out Mr. Canoffel as an individual person. There could have been separate counts. Rule 8 provided for that. If the government wanted to charge him as an individual, a separate count could have been brought for each claim in this indictment against Mr. Canoffel as an individual. Then it would have been. It's pretty clear if you go to Count 1, Timothy Lowell Canoffel and Advanced Docks and Decks were operating at times. But what, Your Honor, I can't. Timothy Lowell Canoffel and Advanced Docks pumped oil. But the corporation cannot act but for through an individual, a human being. If you were arguing the other way around, you might have something to say for yourself. But in this, i.e., if they had dismissed him and left him in the corporation. But this way, the corporation not only acts through him and the corporation wasn't there, they charged both of them. They charged him and they charged the corporation. Well, wholly apart from that, though, if we move on to the acceptance of responsibility claim, think about being in Mr. Canoffel's shoes before the court, before the jury, trying the case, thinking as a matter of strategy the blame will be shifted to the corporation, that in the very least the outcome will be here, that he is not seen by the jury as a matter of evidence. He's thinking it's going to all be dumped on the corporation? Sure. So there wasn't a corporation? Sure. There was a corporation at the time? Yes. There was a corporation at some time. It's unclear at this point when the corporation went defunct. Did he make the motion to dismiss it because there wasn't a corporation? He did. So how could he think that the jury was going to think there was a corporation? Judge, Your Honor, respectfully, you know, circumstances alter cases. Arguments arise in the context of a trial as it's ongoing. It depends on how things are working out. The government did not offer, it was its burden to offer evidence of proof against the corporation. It failed to come forward with that by its own acknowledgment. If that's the case, we're going to take advantage of that and argue the case appropriately. But had the government come forward with the evidence of corporate existence, what I'm saying is a matter of prejudice here is that the blame would have been squarely laid on the shoulders of the corporation and not on the shoulders of Mr. Canomba. Do you have any case that's similar to this that you're relying on? On these facts? No, Your Honor. Maybe you should move on to your next point then. All right. Well, lastly, in terms of acceptance of responsibility, thinking about the case strategically on the front end, I'd like the Court to consider that you would have a reason for going to trial here. It's not a completely silly interpretation of this indictment to believe that the corporation is a player, that blame could be squarely laid on the shoulders of the corporation. This is an interesting problem, because he did accept responsibility in sort of the vernacular, in the sense that he fixed up the boat and he tried to make things right. But at the end, I mean, quite aside from going to trial, at the end, when he stood up, he said, I didn't intend to do this. And the jury had to have found that he did. Right? So how could he have accepted responsibility? They clearly found that he had acted knowingly. There's no question about that. He clearly stood up and said, you know, I did this thing, but I didn't do it knowingly. I did not do it knowingly. And I have no answer to that problem. I just don't. I don't think he's trying to be a trepidant here. I'm sorry? The legal question is, is it permissible under the guidelines, under those circumstances, to find an acceptance of responsibility? Where he did try to make things right and in terms of as a practical matter accepted responsibility, but sort of as a moral matter stood up and said, I wasn't guilty. Well, I think his point was, and that's what I want to connect it to, was that he was acting in a business capacity throughout the entire period, and that he's willing as a businessman to undertake repairs on his boat, to pay for the cleanup, and so on. And you think he ever expressed contrition for what happened? I think he did at his own level. I think we do that all in our own way. And I think this record admits of that, Your Honor, yes. Do you think he ever expressed it before the Court? Yes, Your Honor, I do. At which point? I think the Judge Malloy took into account the give and take, the discussions with government counsel, his colloquy and allocution, meeting Mr. Canoffel's, and I think he made a rational point. He was very sorry that something he owned had made this big mess and he expects it. But that's so the question is, is that good enough? Is there any argument that it's good enough? Well, I think so, if you think that Mr. Canoffel is believing that he is acting as advance dux and dex in a business sense. I think the answer is yes. What sentence is your client looking at right now? Your Honor, he got a split sentence of four months home confinement, four months community confinement, and three years supervised release. And the government is challenging the community confinement. Correct. Because he was in Zone C. Correct. If you lose the appeal, what's he going to get? I don't know, Your Honor, what Judge Malloy will do.  Do you have anything else you'd like to say? No, Your Honor. Thank you. There are cross appeals here, so. Yes. We'll give everybody an opportunity to respond to everything. Good morning. May it please the Court. Matthew Sanders for the United States. This is a very straightforward case involving a criminal defendant's conviction for knowingly discharging oil and for failing to report two oil discharges into Flathead Lake, Montana. The Court seems interested, and since my opposing counsel addressed it, I'll briefly address the issue of the constructive amendment of the indictment. Dismissal of the charges against the defendant's corporation did not constructively amend the indictment because it is plain from the face of the indictment, as the Court was suggesting, that the defendant and his corporation were, in fact, being charged as separate persons or entities under the Clean Water Act. There is no evidence whatsoever anywhere to be found in the indictment, and the defendant doesn't point to any to suggest that, in fact, they were being charged as one entity and that the dismissal of the charges against the corporation in any way affected the charges against the defendant. This is, in fact, evidenced by the fact that at trial he defended himself as an individual. In addition, because the defendant was on notice that he was being, in fact, to the charges against him as an individual. And the government offered proof at trial that went solely to his guilt as an individual and his acts as an individual. I'm sorry? Well, I mean, I wasn't the trial counsel, so I'll try to answer that as best I can. As far as I understand, the government was interested in charging both the defendant as an individual and his corporation to the extent that both may have been involved in these crimes. But the government, as it admitted at trial or after trial, could not prove the technical existence of the corporation and so moved under Rule 48 to dismiss the charges against the corporation. So before the indictment was filed, the government hadn't obtained any information regarding the existence of the corporation? Well, from what I understand, the government was waiting for papers from the State of Montana to confirm the existence of the corporation, but it didn't obtain the papers. And at the end of the trial realized that, in fact, it couldn't get those papers and couldn't prove the existence of the corporation. It's like you find weapons of mass destruction. Something like that. I'd like to briefly address the judicial admission issue. The only two points I'd like to make here is that the government could not have judicially admitted a lower reporting standard for oil discharge reporting. Judicial admissions are typically admissions of facts at issue, not law. And it is the role of the judge, not the parties, to instruct the jury as to the law. The only thing that was a little odd here was that you told the jury why you didn't charge it and thereby confused them to some degree. Yeah, I agree that it is potentially confusing. And that certainly was evidenced by the fact that the jury came back with a question and asked about it. But even in its opening statement, the government was careful to say, we're not going to charge the defendant with a discharge at Woods Bay, but because he at least reported it to somebody. But the government very carefully then added the agency to which he did report the discharge was not the proper official agency to report that to. And under the Clean Water Act, it's very clear, and the appropriate regulation is very clear to which agency the defendant must report. Second, even if the government could have judicially admitted a lower reporting standard, it did not do so here. A judicial admission is a clear, unambiguous concession of a fact at issue. Here, the government did not concede anything. It merely explained why, in its prosecutorial discretion, it was not bringing a particular charge. With regard to the issues being appealed by the government, the district court clearly erred when it granted the defendant an adjustment for his alleged acceptance of responsibility. Yes, yes, unless the court has further questions about the defendant's issues. This is true for two reasons. First, the sentencing guidelines and this court's case law make clear that,  the acceptance of responsibility adjustment is, quote, not intended to apply to a defendant who puts the government to its burden of proof at trial, is convicted, and only then admits guilt and expresses remorse, end quote. It doesn't foreclose it. It absolutely does not foreclose it. That's very true. United States v. McKinney, a case that we pointed out in our brief. In that case, this court reversed the district court's refusal to grant the defendant a reduction for his acceptance of responsibility. But two cases that came after McKinney, Sotelo and Easter, made clear just how limited McKinney is. In McKinney, the defendant assisted police officers. He accepted responsibility immediately after arrest. He was thwarted in his attempts to plead guilty before trial, and he proved. And so there's this odd situation where the defendant maintains perhaps an error, but nonetheless he maintains, that he understood he was going to trial as a corporation and he essentially thought he had a technical defense to that. Now, he may have been totally wrong about that, but that's an odd situation. It is an odd situation, but I'm not sure that it really matters. And that's true for two reasons. First, the fact that the defendant wanted to blame the corporation is further evidence that he was unwilling to accept responsibility himself. He's contentious. He thought he was being tried as the corporation. So he thought, as I understand it, he had a defense, which is there was no corporation, and he was putting the government to its proof. They didn't prove it. He thought he had a technical defense, essentially. Now, we may think he's wrong about that, that he wasn't really charged that way. But that's his explanation for what he did. Well, I would submit that not only was he not charged that way, but the evidence suggests that, in fact, he was not conceiving of his defense that way. If you read the transcript, it's clear that he understood he was being indicted, that he had been indicted and was being tried as an individual. All of the evidence that he talked about in his testimony went to the factual elements of his own individual guilt, talking about his mental state, talking about what facts he was allegedly unaware of, things like that. There was nothing that he offered to suggest that, in fact, the corporation was guilty or that somehow he was acting in the capacity as an agent of the corporation. So I would submit that that doesn't really apply here and doesn't make sense given the evidence. So I think the point is that this isn't one of those rare cases in which a defendant can go to trial and still receive the acceptance of responsibility reduction. Moreover, the defendant here never accepted responsibility for the crimes of which he was convicted, the knowing discharge of oil and the failure to report oil discharges. Well, what did he do to make amends? Well, the EPA, after the Woods Bay incident, gave him three options to fix his boat, basically. And he chose one that was quite expensive. He put a new bottom on his boat in the hopes that it wouldn't sink again. What other expenses did he shoulder as a result of his behavior for which he was convicted? I'm not aware that he shouldered any other expenses. The Coast Guard did send him a bill for the initial incident that occurred in 1997 at Summers Bay. And? And. Did he pay it? I don't know. That's not something that's in the record of this trial. But he didn't shoulder any other expenses. But the sentencing guidelines make clear, and this Court's case law make clear, that to receive a reduction, you have to truthfully admit the conduct comprising the offense of conviction. Judge Malloy's statement that Mr. Knopfel did approach the lectern and, in an emotional way, did accept responsibility in the fashion I believe he is required to accept responsibility. Therefore, this is one of those rare cases. Well, what happened? Law. He was wrong. Right. I think he did clearly err. And the reason for that is, prior to that statement, what Mr. Knopfel had said at sentencing was, I didn't knowingly or intentionally discharge anything at a Flathead Lake. It was an accident. I'm responsible only for the cleanup. The district court said, those statements aren't going to get you the adjustment. And then the defendant approached the lectern and gave what the judge found was an emotional statement. And I'll read that entire statement. It's very short. Your Honor, I accept responsibility for the cleanup. I know that it was my boat that discharged. I don't accept the fact that it's knowingly, deliberately, or intentionally discharging, if that's what you mean. I want to pay for everything. I don't want the taxpayers or anybody else to pay for my burden of life. So, I mean, I don't understand. I've seen it said on the 5 o'clock news that I wanted to pay for it, that I'm responsible because it is my boat. But I didn't knowingly or deliberately discharge anything into Flathead Lake. That is, at best, a limited acceptance for the consequences of his actions and abdication, a complete abdication of responsibility for the actions themselves. The guidelines require him to ---- The problem here is that he did, though, he showed up when there were problems. He spent his money on fixing the boat and so on. If there's no ---- if we read this acceptance rigidly as not regarding that as a ---- let's put aside the trial for a minute. But there's a list of factors of which truthfully admitting the conduct is one, but there are others, voluntary termination or withdrawal from criminal conduct, voluntary payment of restitution prior to adjudication or guilt, voluntary assistance to authorities, many of which he seems to have done. And if there's no incentive for people to do that, then he may just as well have blown off fixing the boat. But I would urge the Court to consider those activities in the larger scheme of things. Yes, he did put a new bottom on his boat and he did show up and he did help people, but he discharged ---- he was convicted of knowingly discharging oil into the lake at Angel Point. And his responsibility departure is to encourage some set of behaviors after you've done something wrong. That's right. And he engaged in some of the behaviors that we're trying to encourage. He did, but he ---- Does the fact that he didn't engage in all of them mean that he can't get his departure? Well, again, he did engage in some of them, but he left the ---- he discharged oil into Angel Point, refueled his boat and then left. So his responsibility departure assumes a guilty person. So that doesn't help. All right. We have a guilty person. Right. We're trying to encourage certain behaviors by guilty people. That's why we have this departure. Well, I certainly would not suggest to the Court that the defendant did not exhibit some real contrition here. All right. So if we ---- that's a major concession. So if we now interpret the guidelines to not give any ---- not allow a judge in his discretion to give any reward for that kind of contrition because we want some other kind of contrition, aren't we going to discourage those behaviors? The next guy just won't bother. Well, I don't think that ---- I don't think so in this case because, again, those acts, those behaviors are contradicted by his other behaviors and statements made at trial and made during sentencing. And the guidelines are very clear that you have ---- a defendant has to admit to the conduct comprising the offense of conviction. Actually, what it says, as I read it, in determining whether a defendant qualifies under subsection A, appropriate considerations include but are not limited to the following. A, truthfully admitting the conduct comprising the offense. B, voluntary termination of withdrawal. C, voluntary payment of restitutions, et cetera, et cetera. So A seems to be co-equal with the rest and not mandatory. But the district court, even after considering all of his acts occurring prior to trial at sentencing, said, what you've done here is not going to get you the adjustment. Only after the defendant approached the lectern and gave the statement that I just read did the district court change its mind. And I would submit that there was nothing in that statement, in fact, quite the opposite, to suggest that suddenly the defendant should be given the adjustment. That is, the district court had said at excerpts of record, page 566, said that the statements he made at sentencing, and presumably accounting for all of his conduct prior to the trial, did not ---- were not sufficient to get to ---- to earn him the adjustment for acceptance of responsibility. And the only thing upon which the district court based its change in position was this statement in which the defendant said, I didn't knowingly do anything. The way I read the record, maybe I'm wrong, is that he was accepting responsibility for what happened, for all the discharges, for the sinking boats. I fully accept responsibility for the disaster that I created in the water. That's right. I can't tell you that I did it knowingly. Right. So he accepts responsibility for what happened, but he carves out that I just didn't do it knowingly, and I can't stand here and lie to you and tell you I did. Right. And had the defendant been convicted of under 33 U.S.C. 1319c1, a negligent violation of the Clean Water Act, that might have been sufficient. Here he was convicted of a knowing violation, and the district court even said, you need to knowingly accept responsibility for what you've done. And he flatly refused to do that. I'm not trying to get him to say that legally he's guilty. That is not the point. I think it's very clear that the acceptance of responsibility is that he's accepted responsibility for his conduct, which is the lake got polluted. He's helped to clean it up. He spent a good amount of time with the one cleanup. He was there the whole time. He took his boat over to Woods Bay. He notified people. Apparently, he felt he was responsible. So the question is, is that an abuse of discretion as an interpretation of the application of the guidelines? I would submit that it is, because given what the defendant did here, which is completely refused to accept responsibility. He just has to agree with the jury's verdict, or he cannot have an acceptance of responsibility departure. Well, I don't. I don't know what else he does. I don't. If he meets B through F, G, that isn't good enough. He has to meet A. I don't know that I would go that far. But I think that given the statements that his going to trial and contesting the factual elements of the charges against him, which this Court has stated, except in very rare situations, and a defendant is not entitled to the adjustment in a case where he does that, and then after he does that, at trial, he completely contests the factual elements of the charges against him and refuses to accept responsibility, the district court pleaded with him to accept responsibility and he would not do so. Well, if he had not appealed, would you have appealed this as a stand-alone appeal? We certainly would have appealed the community confinement issue, which I'd like to briefly address, and we probably would have appealed the acceptance of responsibility issue as well. Go on to the next point, then. Okay. If the Court does not reverse the district court on the acceptance of responsibility issue, it would then reach the government's second issue on appeal, a community confinement issue. And in response to your question, if the defendant did not get the adjustment for acceptance of responsibility, his sentence would be governed by Zone D, which would provide him with a sentence of 12 to 18 months, and there are no split sentences under Zone D. The district court, in clear violation of the sentencing guidelines and this Court's controlling precedent, gave improperly interpreted the sentencing guidelines to allow the defendant's one-half term of required imprisonment to be served in community confinement. Section 5C1.1D of the sentencing guidelines makes clear that there are two unambiguous choices for Zone C sentences, one, a sentence of imprisonment, or two, a sentence of imprisonment that substitutes community confinement for home detention, quote, provided that at least one-half of the minimum term is satisfied by imprisonment, end quote. This Court in the United States v. Latimer held that community confinement and imprisonment are not substitutes and indicated that if the district court opts for a split sentence, it cannot impose a full sentence in a community treatment center. It must impose at least half prison time. The argument itself was not brought to the ---- dispute about whether community confinement constituted imprisonment. I don't recall that. The government made an objection. The end when the government made its objection. Well, the government made its objection, and the district court, as far as I remember, was responding to a memorandum from the U.S. Department of Justice regarding judicial discretion for imposing sentences under Zone C and felt that that was a violation of the separation of powers. But the government didn't articulate, as we're doing here on cross-appeal, the objection that the sentencing guidelines in this Court's case law require, in fact, that community confinement or that a sentence under Zone C include at least half prison time. You didn't make this specific objection. Well, the government objected. Let me amend what I said. The government did ---- Did you wave your arms around to make an objection? No. The government said, we don't think, Your Honor, you have the authority to impose a sentence of community confinement and a home detention. You must impose at least half prison time. It didn't cite United States v. Latimer. But every ---- in addition, every other court of appeals to address this issue, including courts which have directly addressed 5C1.1, have held that, in fact, you have to have at least half prison time. You can't substitute community confinement for that required one-half term of imprisonment. For these reasons, the defendant's conviction should be affirmed, and the case remanded for resentencing. And we'd ask the Court ---- Can we re-sentence him? Prediction. Well, we'd obviously like the Court to hold that the district court abuses discretion with regard to the acceptance of responsibility issue. That would then put the sentence into zone D. If the Court does not do that, we would ask the Court to ---- What would the consequence of that be? What's the ---- A 12 to 18-month prison sentence. So the district court judge opted for the low end, the 12 months in prison. He would not be able to impose a split sentence, so it would be a 12-month prison  And if the Court ---- Could he depart on the ground that because the acceptance of responsibility provision doesn't include this kind of acceptance of responsibility, it's outside the heartland, so they could then do a downward departure? I'm sorry. Could you repeat the question? Could he depart on the ground that this person, while he didn't accept responsibility in the sense that the acceptance of responsibility downward ---- Could he offer a downward departure under 5K2.0? I don't know that I know the answer to that question. You may win this battle and lose the war. That's always a risk. Thank you. You're welcome. Thank you. I just have one point I wanted to make. It kind of comes from Leftfield. I'm a Leftfield kind of guy.  And your Honors will note in there that he sustained a fairly substantial burn as a youngster around the age of 14 years old. And he bears the physical scars of that. And I think that relates ---- I want to make a stretch here and say that that relates to the acceptance issue. I think there's some cookie-cutter prerequisites here that the government wants in terms of acceptance of responsibility. And the pitch that I want to make here is that this man is in society. He's a fully functioning businessman. He worked in Seattle here for a time to learn how to operate a crane. He's come a long way since that burn accident, which was pretty substantial. He lives in society and bears the marks of that accident. And he has that tentativeness to him. He thinks sometimes that, you know, people are ready to set upon, that they don't like them. And he's a very warm and engaging individual. Once you get past, you know, that veneer, and I don't say that in a disrespectful way, he's quite a nice individual. And I think that Judge Malloy was going maybe the extra mile here in the context of the unique facts of this case to give this man those couple of points so that he could put him in that zone and fashion a sentence that he thought was fair. In the pre-sentence report, number 16 on page 6, it talks about the costs incurred by the Coast Guard to clean up this mess. The defendant's involvement in the cleanup would mitigate his responsibility. That involvement is taken into account in the above figures. The Coast Guard will directly attempt to collect on these bills. No restitution has been requested. I assume then there was no restitution ordered? I don't believe there was, Judge. By the time of the sentencing, was there any information in the record suggesting that the Coast Guard had attempted to collect on these bills and was successful or unsuccessful? No, Judge, but from the Summers Point incident in 1997, just before the trial, he got a bill like five and a half years later. Does the record show one way or another what happened to that bill? No, it doesn't. I can tell you, Your Honors, that I'm not aware that he's paid it. But it didn't come until five and one-half years after the fact. What about the 5C1.1d problem? It appears that as a matter of law that the sentence was improper. Well, the community confinement, I think what the judge was thinking was that at the end of one sentence, even if you're in zone D, the Bureau of Prisons often assigns a person toward the latter part of the sentence, to community confinement, and that there's some interchangeability, at least conceptually, between prison and community confinement in that setting. And I think that's where Judge Malloy was thinking. I'm not – I did not understand what you're saying. At the end of somebody's sentence, if they're at Sheridan, they can be sent to Billings and do the last four months of their time in prerelease.  Essentially. Anything else? No, Your Honor. Thank you very much. Thank you both. The case is argued as ordered and submitted. You guys want to take a break? Thank you. Union Oil v. Tree Island.
judges: Trott, Paez, Berzon